DECISION AND JUDGMENT ENTRY
{¶ 1} Acuity, Inc. sued Trimat Construction, Inc. after Trimat refused to make additional payments Acuity claimed were due in conjunction with commercial liability insurance coverage. Trimat appeals the judgment in Acuity's favor and argues the trial court abused its discretion in admitting Acuity's audits under the business records exception to the hearsay rule. Trimat also contends the trial court's findings that Acuity's audit process was reliable and that its mathematical calculations were correct are against the manifest weight of evidence. However, because Trimat failed to appeal the admission of the audit reports and worksheets when this case previously came before us, the admission of these documents remains the law of the case. Further, because the trial court's findings are supported by some competent, credible evidence, *Page 2 
including expert testimony that Acuity properly performed the audits, the judgment of the trial court was not against the manifest weight of the evidence. Therefore, we affirm.
 I. FACTS {¶ 2} Trimat purchased commercial liability insurance from Acuity for the periods from July 7, 2001, through July 7, 2002, and from September 2, 2002, through March 2, 2003. Acuity based the policy premiums on an estimate provided at the time it issued the policies; however, the policies provided that Acuity would perform premium audits of Trimat's records at the conclusion of each policy period to determine the "total earned premium," the actual amount owed by Trimat for insurance coverage. Trimat's policy premiums could vary from the initial estimate based on the amount that Trimat's actual payroll diverged from prior estimates. Moreover, because the policies included liability coverage for Trimat's subcontractors, Acuity also adjusted the premium rate based on a determination of whether these subcontractors had workers' compensation and liability insurance in force during the policy periods. In order to avoid paying a higher rate based on a subcontractor being "uninsured," Trimat had to provide Acuity with certificates of insurance for any subcontractor that Trimat claimed was insured during the policy period. According to Acuity, the premium audits disclosed that the initial premium estimates understated Acuity's exposure. Acuity adjusted the premiums upward because Trimat's payroll was greater than originally estimated and because more subcontractors were uninsured than anticipated.
 {¶ 3} Trimat, however, contended that it had provided Acuity with certificates of insurance for all of its subcontractors and that Acuity had failed to reduce the premium rate accordingly. In December 2003, Acuity filed a complaint seeking a judgment *Page 3 
against Trimat in the amount of $7,576.08, plus prejudgment interest. At a bench trial, Acuity attempted to establish the amount owed through the testimony of one of its field auditors, Bruce Serfas, as well as through various business records, including audit reports, worksheets used to produce the audit reports, and an account summary detailing the charges incurred and the payments made by Trimat. The audits had been conducted by Jeffery Randall of Chlysteck White Services, Inc., an audit service contractor hired by Acuity. Randall, however, did not testify. Over Trimat's objection, the trial court admitted the audit reports and worksheets into evidence under the business record exception to hearsay found in Rule 803(6) of the Ohio Rules of Evidence. However, the trial court determined that Acuity had failed to lay the necessary foundation to establish that the account summary was a business record for purposes of Rule 803(6). Although the account summary was not admitted into evidence, Acuity's auditor testified about the account summary's contents, including the payments Acuity received from Trimat for the insurance coverage.
 {¶ 4} Maurice Toler, Trimat's general manager, contended at trial that Trimat had paid Acuity all premiums that were due. According to Toler, Trimat did not pay the additional $7,576.08 requested by Acuity because Trimat had sent Acuity certificates of insurance for all of its subcontractors but had received self-insured credit for only some of them. Trimat did not support Toler's testimony by offering into evidence any of the subcontractor certificates of insurance it claimed to have submitted to Acuity.
 {¶ 5} The trial court concluded that, without the account summaries, Acuity had failed to produce evidence of the amount it was entitled to recover from Trimat, and the court dismissed the case. Acuity appealed, but Trimat did not file a cross-appeal *Page 4 
challenging the admission of the audit reports and worksheets. We reversed the judgment of the trial court, holding that it was Acuity's burden to prove that its auditing procedures utilized the appropriate factors and that its calculations were mathematically correct. We noted that there was an evidentiary basis in the record by which the trial court could determine the amount owed, and we held that it was Trimat's burden to show as an affirmative defense that the resulting figures did not reflect credits to which Trimat claimed entitlement. We remanded the cause to the trial court for the limited purpose of evaluating the reliability of the auditing process and the additional charges that Acuity claimed Trimat owed. Acuity, Inc. v. Trimat Construction, Gallia App. No. 05CA2, 2005-Ohio-6128.
 {¶ 6} On remand, the trial court held a second hearing. Acuity offered the testimony of a different field auditor, Phillip Tremblay, and asked him to identify the audit reports that had been previously admitted into evidence. Upon Trimat's objection, the trial court required Acuity to lay the foundation for the admission of these business records. Tremblay, an employee of Acuity, testified that he had previously been employed with Chlysteck White and that he was "familiar with the record keeping procedures" of that firm. The trial court admitted the audit reports and worksheets as business records over Trimat's objection. Tremblay then testified that, based on his review of the audit reports, the audit of Trimat had been properly performed. Trimat did not object to Tremblay's opinion testimony; however, Tremblay admitted that he had not independently verified the audit reports using Trimat's files.
 {¶ 7} The trial court entered a judgment in favor of Acuity, finding that the audit process used the appropriate factors and was reliable. Further, the trial court found that *Page 5 
the audits' mathematical calculations were correct. Although the dispute centered on whether Trimat had received credit for certificates of insurance that Trimat claimed that it supplied to Acuity, the trial court noted that Trimat had failed to produce the certificates of insurance at trial. Trimat filed this appeal.
 II. ASSIGNMENTS OF ERROR {¶ 8} Trimat presents two assignments of error:
 1) "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY ADMITTING HEARSAY EVIDENCE PURSUANT TO THE BUSINESS RECORDS EXCEPTION WHEREAS THE APPELLEE FAILED TO LAY A PROPER FOUNDATION TO ESTABLISH THE ADMISSIBILITY OF THE RECORDS"
 2) "THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE WHEREAS THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE TO ESTABLISH THE VALIDITY OF THE AUDIT PROCESS AND THE ADDITIONAL CHARGES APPELLEE CLAIMS ARE DUE FROM THE APPELLANT."
 III. STANDARD OF REVIEW {¶ 9} We have previously noted the standard of review for a trial court's decision to admit evidence under the business records exception to the hearsay rule:
 "The decision to admit business records pursuant to Evid. R. 803(6) rests within the discretion of the trial court. Peters v. Ohio State Lottery Commission (1992), 63 Ohio St.3d 296, 587 N.E.2d 290; see, also, WUPW TV-36 v. Direct Results Marketing, Inc. (1990), 70 Ohio App.3d 710, 714, 591 N.E.2d 1345 (stating that the decision to admit a business record into evidence pursuant to Evid. R. 803(6) rests within the sound discretion of the trial court, whose determination will not be disturbed on appeal unless an abuse of discretion can be shown). The trial court abuses its discretion in admitting business records when the proponent of the evidence fails to frame an adequate foundation to establish the admissibility of the records. Hinte v. Echo
(1998), 130 Ohio App.3d 678, 720 N.E .2d 994, discretionary appeal disallowed (1999), 85 Ohio St.3d 1460, 708 N.E.2d 1013; State v. Comstock (Aug. 15, 1997), Ashtabula App. No. 96-A-0058, unreported." *Page 6 
Motorist Ins. Companies v. Shields, 4th Dist. No. 00CA26, 2001-Ohio-2387. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. Wilmington SteelProducts, Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120,121, 573 N.E.2d 622, 623.
 {¶ 10} When reviewing weight of the evidence questions, "[a]n appellate court will not reverse a trial court's decision as being against the manifest weight of the evidence when some competent, credible evidence that goes to all essential elements of the case supports the trial court's judgment. State Farm Fire Cas. Co. v.Bowman, 4th Dist. No. 06CA15, 2007-Ohio-4405, at ¶ 17 (citing Shemo v.Maple Hts. (2000), 88 Ohio St.3d 7, 722 N.E.2d 1018, and State ex. rel.Pizza v. Strope (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765). "Some" evidence is sufficient to prevent a reversal of judgment.Bowman, 2007-Ohio-4405, at ¶ 17 (citing Bullion v. Gahm,164 Ohio App.3d 344, 2005-Ohio-5966, 842 N.E.2d 540, at ¶ 14). This amounts to a deferential standard of review that does not allow us to "second guess" the fact finder.
 IV. THE ADMISSION OF THE AUDIT REPORTS INTO EVIDENCE {¶ 11} Trimat first argues that the trial court abused its discretion in admitting the audit reports and worksheets into evidence because Acuity failed to properly lay the foundation for the business records exception. However, Trimat did not challenge the trial court's admission of the audit reports and worksheets in a cross-appeal when this case was previously before us on Acuity's appeal in 2005. Because Trimat failed to challenge the admission of the evidence in a cross-appeal, it waived any error on the record as the record stood at that time. See GliddenCo. v. Lumbermens Mut. Cas. Co., 112 Ohio St.3d 470, 476,2006-Ohio-6553, at ¶ 32 ("[A]n assignment of error by an *Page 7 
appellee, where such appellee has not filed any notice of appeal from the judgment of the lower court, . . . may not be used by the appellee as a sword to destroy or modify that judgment."); Hawkins v. City ofSteubenville (1938) 134 Ohio St. 468, 472, 17 N.E.2d 641, 643 (1938) (holding that the appellee waived error where no cross-appeal was brought to contest that error); Keytack v. Warren, 11th Dist. No. 2005-T-0152, 2006-Ohio-5179, at ¶ 56 ("[An] appellee may not challenge or impeach the trial court's decision without filing either a cross-appeal or a cross-assignment of error."); Poulton v. AmericanEconomy Ins. Co., 5th Dist. Nos. 2002-CA-00038, 2002-CA-00061, 2002-Ohio-7214, at ¶ 72 ("[W]e find American States' argument is raised in its appellee's brief, and American States did not file a separate cross-appeal on this issue. Accordingly, we find American States has . . . waived this argument."). Thus, the admission of the audit reports in the first hearing became the law of the case once we remanded the cause to the trial court for a determination of the reliability of the audit process.
 {¶ 12} The law-of-the-case doctrine "precludes a litigant from attempting to rely on arguments at retrial which were fully litigated, or could have been fully litigated, in a first appeal." State ex rel.Danziger v. Yarbrough, 114 Ohio St.3d 261, 264, 2007-Ohio-4009, at ¶ 16, quoting Hubbard ex rel. Creed v. Sauline (1996),74 Ohio St.3d 402, 404-405, 659 N.E.2d 781. The law of the case is a longstanding doctrine in Ohio jurisprudence. "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan,11 Ohio St.3d at 3, 11 OBR 1, 462 N.E.2d 410. "The doctrine is necessary to ensure *Page 8 
consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Water WorksSupplies, Inc. v. Grooms Construction, Co., 4th Dist. No. 04CA12, 2005-Ohio-1292, at ¶ 12, unreported, citing State ex rel. Potain v.Mathews (1979), 59 Ohio St.2d 29, 32, 391 N.E.2d 343. As we have stated:
 "`In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given.'"
Water Works Supplies, 2005-Ohio-1292, at ¶ 13, quoting Nolan,11 Ohio St.3d at 3, 462 N.E.2d 410.
 {¶ 13} The only issues on remand were whether Acuity's auditing process considered the proper factors, whether Acuity's calculations were mathematically correct, and whether Trimat had proven that it was entitled to any credit against the premium it owed Acuity. Our remand regarding these issues was narrow, and it was unnecessary for the trial court to require additional foundation regarding the admissibility of the business records because we had already determined that "there was an evidentiary basis from which the court could calculate the `balance due and owing.'" Acuity, Inc. v. Trimat Construction, Gallia App. No. 05CA2, 2005-Ohio-6128, at ¶ 19. The admission of these documents is the law of the case, and the trial court did not err in refusing to exclude the audit reports and the worksheets on remand. Therefore, we overrule Trimat's first assignment of error. *Page 9 
 V. THE WEIGHT OF THE EVIDENCE {¶ 14} In its second assignment of error, Trimat argues that Acuity did not produce any evidence "to confirm that the audit process was performed correctly or that its calculations were correct." Specifically, Trimat argues that Acuity failed to produce testimony by anyone from Chlystek White to validate the audit. Trimat also points to Tremblay's testimony that he did not independently verify the audit reports. However, because the audit reports and worksheets were admitted as business records, it was not necessary for Acuity to independently verify their accuracy. The Supreme Court of Ohio has stated that the business record exception "is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy." Weis v. Weis (1947), 147 Ohio St. 416, 425-426,72 N.E.2d 245. "`In other words, such records are accepted as accurate and trustworthy, until inaccuracy is shown, upon faith in the routine by which and in the purpose for which they are made.'" Springfield v.Pullins (2nd Dist. 1998), 130 Ohio App.3d 346, 357, 720 N.E.2d 138, 147,quoting Weis, 147 Ohio St. at 426. Therefore, once the trial court admitted the audit reports and the worksheets as business records, the trial court could rely on them as accurately representing the audits' findings.
 {¶ 15} Moreover, the audits were not the only evidence relied on by the trial court. Tremblay testified that, based upon his years of experience as a field auditor, it was his opinion that the audits had considered the proper factors, that they had been *Page 10 
performed in the customary manner, and that nothing about the audit reports raised any "red flags." Trimat did not object to Tremblay providing an expert opinion, nor does it argue before us now that Acuity failed to lay the proper foundation for expert testimony. Therefore, there was some competent, credible evidence in the record that supported the trial court's factual finding that the audit process was sound and that the mathematical calculations were accurate.
 {¶ 16} The only evidence that Trimat produced was the testimony of Maurice Toler, who was the general manager of Trimat. Toler's testimony indicates that Trimat had possession of the certificates of insurance, yet it did not produce those certificates before the trial court. The trial court noted the failure to produce this evidence as supporting its judgment. We recognize that Toler testified that Trimat had forwarded the certificates of insurance for its subcontractors to Acuity and that Acuity nonetheless failed to adjust the premiums based on the lower level of exposure that this represented. We also note his testimony that he had personal knowledge that these subcontractors had their own insurance. However, notwithstanding this conflict in evidence, we leave credibility determinations and the decision concerning which of two credible versions of events to believe to the trial court. Bugg v.Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶ 9. We may not substitute our judgment for that of the trial court. Bauerbach v. LWREnts., 169 Ohio App.3d 20, 2006-Ohio-4991, at ¶ 22. Competent, credible evidence supports the trial court's findings that the auditing process was proper and that Acuity's mathematical calculations were correct. Accordingly, we overrule Trimat's second assignment of error. *Page 11 
 VI. CONCLUSION {¶ 17} Because the admission of the audit reports and worksheets as business records is the law of the case, the trial court did not err in overruling Trimat's objection to admitting them in the post-remand proceeding. Also, we hold that the trial court's monetary award is supported by some competent evidence. Accordingly, we overrule Trimat's assignments of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J.: Concurs in Judgment and Opinion. Kline, J.: Dissents. *Page 1